JEANNE A. FUGATE (SBN 236341)
 jfugate@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone:    (415) 318-1200
Facsimile:    (415) 318-1300

OLIVIA A. RADIN (*pro hac vice submitted herewith*)
 oradin@kslaw.com
NICOLE PEREIRA (*pro hac vice submitted herewith*)
 npereira@kslaw.com
KATHRYNE HUNTER (*pro hac vice submitted herewith*)
 khunter@kslaw.com
**KING & SPALDING LLP**
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-2601
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Attorneys for Plaintiff
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GOOGLE LLC<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NO FOND PRAVOSLAVNOGO TELEVIDENIYA,<br><br>　　　　Defendant. | Case No.<br><br>**PLAINTIFF GOOGLE LLC'S COMPLAINT AGAINST DEFENDANT NO FOND PRAVOSLAVNOGO TELEVIDENIYA**<br><br>**(DEMAND FOR JURY TRIAL)** |

COMPLAINT

## COMPLAINT

Plaintiff Google LLC ("Google"), by and through its undersigned counsel, brings this action against Defendant NO Fond Pravoslavnogo Televideniya ("NFPT") as set forth below:

## NATURE OF THE ACTION

1. Google brings this action to enjoin NFPT, a Russian entity, from enforcing a Russian court judgment (the "Russian Judgment") that NFPT obtained in breach of its contractual obligations to Google. The Russian Judgment imposes a) an order of specific performance on Google, demanding that Google and its affiliate unblock NFPT's YouTube channel, and b) a related financial penalty on Google and its affiliate for not complying with the Russian court's unconscionable order.

2. NFPT obtained the Russian Judgment wrongfully—under a Russian law that was passed to counter U.S. and other sanctions against Russia—and is now trying to enforce it in foreign jurisdictions, causing further harm. Google seeks injunctive relief enjoining NFPT from enforcing the Russian Judgment and all related appellate decisions, as well as declaratory relief that the Russian Judgment and all related appellate decisions are unenforceable against Google.

3. Google is a U.S. technology company that provides products and services to its users, including free services such as the search engine Google Search, the email platform Gmail, and the video-sharing platform YouTube. Users with Google accounts can create YouTube channels to upload content on YouTube, including videos, comments, and playlists.

4. NFPT is a Russian media company and the operator of the Russian TV channel "Pervyi Obschestvennyi Pravoslavnyi Telekanal SPAS" (translated into English as the First Public Orthodox TV Channel SPAS) (the "SPAS TV Channel"), a television channel associated with the Russian Orthodox Church. It also operated the YouTube channel, Telekanal Spas (translated into English as Spas TV), at http://youtube.com/spastvruchannel (the "YouTube Channel"). NFPT is controlled by the Russian Orthodox Church, whose Patriarch, Vladimir Mikhailovich Gundyayev ("Patriarch Kirill"), was sanctioned by the United Kingdom on June

1 | 16, 2022 for his support of the Russian invasion of Ukraine.[1]

2 |     5.    The YouTube Channel, and the Google account with which it was created (the "Google Account"), were assigned to NFPT in 2019. Through that assignment, and by using the Google Account and YouTube Channel, NFPT agreed to the Google Terms of Service (the "Google Terms of Service") (Ex. A) and the YouTube Terms of Service (the "YouTube Terms of Service"). The YouTube Terms of Service incorporate the terms of YouTube's policies, including YouTube's Community Guidelines (the "Community Guidelines"), which are a set of policies that govern the type of content that is allowed on YouTube. The Google Terms of Service require all disputes arising out of or relating to the Google Terms of Service to be resolved under California law in the courts of Santa Clara County, California. The YouTube Terms of Service require all disputes arising out of or relating to the YouTube Terms of Service to be resolved under English law in the courts of England and Wales.[2]

    6.    NFPT posted content on the YouTube Channel. In early March 2022, shortly after Russia's invasion of Ukraine, Google blocked access by third parties to various YouTube channels to address the dissemination of harmful content about the war in Ukraine, including blocking access to the YouTube Channel. As a result, third parties could not access the videos on the YouTube Channel.

    7.    Notwithstanding the express language of the Google Terms of Service, on September 30, 2022, NFPT sued Google in Russia, using a law that was specifically designed to counter U.S. and other foreign sanctions. (Ex. B.) NFPT raised claims under the "Google Terms of Service posted on the official website of www.youtube.com," "the policies/rules of Google," and Russian legislation. NFPT thereby raised disputes relating to both the Google Terms of Service and the YouTube Terms of Service in Russia, even though those Terms of Service called for resolution of all disputes in, respectively, California and England.

    8.    NFPT asked the Arbitrazh Court of the City of Moscow (the "Russian Arbitrazh

---

[1] Patriarch Kirill was also sanctioned by Canada on July 8, 2022, subsequently by Ukraine on October 18, 2022, and by Australia and the Czech Republic in 2023.

[2] Because the YouTube Terms of Service selected England as the exclusive forum for disputes they are not the subject of this lawsuit.

COMPLAINT      2

Court"), a civil trial court for business disputes, to order Google to unblock the YouTube Channel. NFPT further asked the Russian Arbitrazh Court to impose a compounding penalty (called an "*astreinte*" under Russian law) on Google and its affiliate if the YouTube Channel remained blocked. NFPT asked that this penalty start at 100,000 rubles (approximately $1,050) per day and double each week until Google complied with the Russian Arbitrazh Court's order.

9. Even though the parties had expressly selected a forum outside Russia to resolve disputes, the Russian Arbitrazh Court asserted jurisdiction—over Google's objections—on the grounds that NFPT could be prejudiced by foreign sanctions and such sanction laws are contrary to Russian public policy and should not apply to Russian entities. (Ex. C.)

10. Google objected to jurisdiction and contested NFPT's claims before the Russian Arbitrazh Court, to vindicate its agreed-upon rights to resolve disputes in its chosen forum and to terminate contracts in accordance with its policies against harmful content. These efforts were brushed aside by the Russian Arbitrazh Court, which exercised jurisdiction and issued a judgment on March 14, 2023. (Exs. C, D.) Based on NFPT's claims, the Russian Arbitrazh Court held that the services at issue were provided "in accordance with . . . the agreements posted online: the Google Terms of Service (https://policies.google.com/terms?hl=m) and the YouTube Terms of Service (https://www.youtube.com/t/terms)" and that Google's "unilateral repudiation of the contracts for the provision of the Google account service and YouTube video hosting service has no valid legal basis, violates the requirements of Russian law, as well as generally recognized norms of international law, and therefore, is subject to invalidation in accordance with Article 168" of the Civil Code of the Russian Federation. (Ex. D at 8–9.)

11. The Russian Arbitrazh Court ordered Google to unblock the YouTube Channel and imposed NFPT's requested penalty against Google. (*Id.* at 14.) This penalty continues to accrue unless and until Google unblocks NFPT's YouTube Channel, which would be in direct contravention of its policies against harmful content. (*Id.* at 15.) By issuing the Russian Judgment, the Russian courts demonstrated that they are subject to political influence and have been weaponized to support Russia's efforts to undermine U.S. sanctions. As a result, the Russian Judgment is contrary to the international legal order and subverts enforcement rules

applicable in foreign jurisdictions, thereby circumventing the policies and laws of local governments as enforced through their judicial systems.

12. NFPT recently initiated a lawsuit in South Africa (the "South African Enforcement Action") seeking to enforce a decision by the Ninth Arbitrazh Court of Appeal, a first-level appellate court (the "Russian Appellate Court") that affirmed the Russian Judgment, against Google, claiming that its dispute arises under, *inter alia*, the Google Terms of Service. (Ex. E.) NFPT named a South African affiliate of Google, Google South Africa (Pty) Ltd ("Google South Africa"), as a second respondent. In March 2024, NFPT obtained an *ex parte* order for the attachment of Google South Africa's shares and Google's registered trademarks in South Africa (Ex. F), and subsequently instructed a South African court sheriff to attach those assets in South Africa pursuant to the order. In May 2024, the court sheriff certified that she executed those attachments. In addition, NFPT has reportedly commenced proceedings in Kyrgyzstan and Serbia to recognize and/or enforce the Russian Judgment. These enforcement actions are an attempt to seize funds from Google through a Russian judgment obtained in violation of the binding forum-selection and choice-of-law provisions of the Google Terms of Service and YouTube Terms of Service.

13. On information and belief, NFPT plans to bring more enforcement actions in additional countries around the world. According to public reporting, NFPT and two other Russian *astreinte* holders[3] plan to enforce the Russian Judgment in fifteen foreign jurisdictions, which will cause Google further harm in contravention of the binding provisions of these Terms of Service.[4] In addition, on information and belief, NFPT may file a lawsuit in Russia under a Russian law that was passed to counter the impact of sanctions, seeking an injunction to prevent Google from proceeding with this action (an "anti-suit injunction").

---

[3] Google is filing complaints against these two other companies, NAO Tsargrad Media and ANO TV-Novosti, also seeking temporary restraining orders and preliminary injunctive relief. Google intends to file an Administrative Motion to Relate the three cases because "[i]t appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." Civil Local Rule 3-12(a)(2).

[4] "A court in South Africa seized Google assets based on the decision of the ASGM," Pravo RU (June 11, 2024), https://pravo.ru/news/253511/?_x_tr_hist=true.

COMPLAINT 4

14. Google, an American company headquartered in this district, seeks expedited, equitable relief from this Court including, *inter alia*:

- injunctive relief enjoining enforcement of the Russian Judgment and all related appellate decisions outside Russia;
- injunctive relief enjoining NFPT's efforts to obtain an anti-suit injunction in Russia relating to this lawsuit;
- declaratory relief that the forum-selection clause and choice-of-law provisions of the Google Terms of Service are valid and binding upon the parties; and
- declaratory relief that NFPT breached the Google Terms of Service when it pursued claims purportedly arising under the Google Terms of Service in Russia.

15. California strongly favors enforcing presumptively valid forum-selection clauses and Google—which was wrongfully sued by NFPT under the Google Terms of Service in a foreign jurisdiction—seeks protection under the laws of California, which the parties agreed would govern any dispute arising under the Google Terms of Service.[5]

## PARTIES

16. Plaintiff Google is a Delaware limited liability company with its principal place of business in Mountain View, California.

17. Defendant NFPT is a Russian media company organized under Russian law with its principal place of business in Russia. NFPT is controlled by the Russian Orthodox Church which is in turn headed by Patriarch Kirill. Patriarch Kirill has been sanctioned by the United Kingdom and other governments for his support for and endorsement of Putin's war. The EU has also sanctioned the SPAS TV Channel (which was also operated by NFPT) for "spread[ing] pro-Kremlin propaganda and disinformation on Russia's war of aggression against Ukraine" and "justif[ying] [this] war. . . on religious and spiritual grounds."[6] The EU separately sanctioned the

---

[5] Google has brought a separate proceeding in the English courts on the basis of NFPT's breach of the YouTube Terms of Service, which require the parties to resolve any dispute arising thereunder before the Courts of England and Wales and under the laws of England and Wales.
[6] Council Implementing Regulation (EU) 2023/2875 dated December 18, 2023, available at https://eur-lex.europa.eu/legal-content/EN/TXT/PDF/?uri=OJ:L_202302875.

general director of the SPAS TV Channel because, *inter alia*, "his comments associate the West and Ukraine with godlessness and the devil" in line with the Kremlin's propaganda "claiming that one of the goals of the war of aggression against Ukraine is the 'fight against godlessness.'"[7]

## JURISDICTION & VENUE

18. This Court has personal jurisdiction over NFPT because NFPT agreed to be subject to suit in this Court. NFPT agreed to the Google Terms of Service, which state (in relevant part) that, "All disputes in any way relating to these terms, the additional terms of use of individual services or the services, regardless of conflict of laws rules, shall be resolved in accordance with the laws of the State of California, USA. **Such disputes are subject to the exclusive jurisdiction of the federal and state courts located in Santa Clara County, California, USA. You and Google equally consent to the personal jurisdiction of these courts.**" (Ex. A at 11 (emphasis added).)

19. To the extent necessary, NFPT also has sufficient minimum contacts with California because NFPT—through its litigation in Russia, South Africa, and in other foreign jurisdictions—seeks to cause Google, a citizen of California, to take action within California to comply with the Russian Judgment and related appellate judgments.

20. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2). The amount in controversy exceeds $75,000, exclusive of interest and costs. Google is a citizen of California and Delaware, while NFPT is a citizen of a foreign state, Russia.

21. Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. 1391(b) because the Google Terms of Service provide that "all disputes in any way relating to these terms . . . are subject to the exclusive jurisdiction of the federal and state courts of Santa Clara County, California, USA" and the parties expressly consented to personal jurisdiction in these courts. (*Id.* at 11.)

---

[7] Council Implementing Regulation (EU) 2022/2476 dated December 16, 2022, available at https://eur-lex.europa.eu/legal-content/EN/TXT/PDF/?uri=CELEX:32022R2476.

## FACTUAL BACKGROUND

### A. NFPT Obtains the Google Account and Agrees to the Google Terms of Service, and Obtains the YouTube Channel and Agrees to the YouTube Terms of Service

22. On September 10, 2012, OOO Spas TV, a Russian legal entity and NFPT's predecessor in interest, created the Google Account associated with the email address spastv2012@gmail.com. In creating the Google Account, OOO Spas TV agreed to the Google Terms of Service. (Ex. A.) The Google Terms of Service contained a binding choice-of-law and forum-selection clause. (*Id.* at 11.) The Google Terms of Service further established that terms would be modified or updated from time to time and that users agreed to such modifications by their continued use of Google services. (*Id.* at 12.)

23. Also on September 10, 2012, OOO Spas TV used the Google Account to create the YouTube Channel. In order to create the YouTube Channel, OOO Spas TV agreed to the YouTube Terms of Service. The YouTube Terms of Service incorporate the terms of YouTube's policies, including YouTube's Community Guidelines (the "Community Guidelines"), which are a set of policies that govern the type of content that is allowed on YouTube. The YouTube Terms of Service contained a binding choice-of-law and forum-selection clause. The YouTube Terms of Service further established that terms would be modified or updated from time to time and that users agreed to such modifications by their continued use of YouTube services.

24. According to NFPT's own allegations before the Russian Arbitrazh Court, on January 16, 2019, OOO Spas TV assigned the Google Account and the YouTube Channel to NFPT. In continuing to operate the Google Account and YouTube Channel after this assignment, NFPT agreed to, respectively, the Google Terms of Service and the YouTube Terms of Service, including occasional updates to the same as a condition of maintaining the Google Account and hosting the YouTube Channel.

25. At all relevant times, the Google Terms of Service contained a binding choice-of-law and forum-selection clause, which stated:

> All disputes in any way relating to these terms, the additional terms of

> use of individual services or the services, regardless of conflict of laws rules, shall be resolved in accordance with the laws of the State of California, USA. **Such disputes are subject to the exclusive jurisdiction of the federal and state courts located in Santa Clara County, California, USA. You and Google equally consent to the personal jurisdiction of these courts.**

(*Id.* at 11 (emphasis added).)

26. At all relevant times, the YouTube Terms of Service gave Google the right to block the YouTube Channel if (among other things) NFPT violated the Community Guidelines. In addition, the YouTube Terms of Service contained a binding choice-of-law and forum-selection clause, which required all disputes arising thereunder to be resolved under English law in the courts of England and Wales.[8]

### B. Google Exercises its Contractual Right to Block NFPT's YouTube Channel for Violating the YouTube Terms of Service

27. In early March 2022, shortly after Russia's invasion of Ukraine, Google blocked access by third parties to various YouTube channels to address the dissemination of harmful content about the war in Ukraine, including blocking access to the YouTube Channel. As a result, third parties could not access the videos on the YouTube Channel.

### C. NFPT's Controlling Person is Sanctioned by the United Kingdom and Other Governments

28. On June 16, 2022, the Office of Financial Sanctions Implementation of His Majesty's Treasury in the UK ("OFSI") sanctioned Vladimir Gundyayev, known as Patriarch Kirill, the head of the Russian Orthodox Church, who had made multiple public statements in support of the Russian invasion of Ukraine, for engaging in, providing support for, or promoting actions which destabilized Ukraine. Other governments followed suit. Patriarch Kirill was sanctioned by Canada on July 8, 2022, and subsequently by Ukraine on October 18, 2022, and

---

[8] The YouTube Terms of Service selected England and Wales as the exclusive forum for disputes and, accordingly, is not the subject of this lawsuit.

Australia and the Czech Republic in 2023.

        **D.**       **NFPT Files Suit in Russia, Breaching the Google Terms of Service**

29. On September 30, 2022, NFPT sued Google in the Russian Arbitrazh Court, raising claims under the "Google Terms of Service posted on the official website www.youtube.com," "the policies/rules of Google," and Russian legislation. (Ex. B at 1, 3.) NFPT thereby raised claims under both the Google Terms of Service and the YouTube Terms of Service in Russia, even though those Terms of Service called for the resolution of all disputes in, respectively, California and England.

30. By bringing litigation in Russia that was purportedly based on the Google Terms of Service, NFPT breached the binding forum-selection and choice-of-law provisions in the Google Terms of Service. NFPT chose to assert (contrary to the plain language of the contract) that the Google Terms of Service governed the parties' obligations concerning the YouTube Channel; by its own admission, therefore NFPT should have brought its claims before a court in Santa Clara County, California, and pursuant to California law.

31. NFPT asked the Russian Arbitrazh Court for an order requiring Google to unblock third-party access to the YouTube Channel. NFPT also improperly named Google Russia as a defendant, even though Google Russia had no contractual relationship with NFPT, did not provide the Google Account or any related services including the YouTube Channel, and did not have the legal or technical ability to restore the Google Account or the YouTube Channel. (*Id.* at 1, 9–10.)

32. NFPT claimed its suit was permissible under Article 248.1 of the Arbitrazh Procedural Code of the Russian Federation (the "APC"), introduced by Russian Law No. 171-FZ (hereinafter, "Article 248.1"). (Ex. G.) Article 248.1 was enacted in June 2020 to counter the impact of sanctions from "unfriendly foreign states," including the U.S. NFPT relied in its claim on the UK sanctions imposed on Patriarch Kirill in June 2022, as well as on sanctions imposed on Patriarch Kirill by Canada and Ukraine, to support the Russian Arbitrazh Court's jurisdiction under Article 248.1. (Ex. B at 4, 6.)

33. Article 248.1 purports to grant Russian courts "exclusive jurisdiction" over

disputes involving Russian individuals subject to sanctions by foreign states, "*unless otherwise provided by . . . agreement of the parties.*" (Ex. G at 1.) The Google Terms of Service constitute such an agreement, as they provide that disputes between NFPT and Google that purportedly arise under the Google Terms of Service will be heard in the courts of Santa Clara County, California. And while the Google Terms of Service permit account holders to petition foreign courts only "*if* applicable local law *prevents* certain disputes from being resolved in a California court" or "*if* applicable local law *prevents* [a user's] local court from applying California law to resolve these disputes," (Ex. A at 12 (emphases added)), Article 248.1 does not "prevent" NFPT from complying with the Google Terms of Service's forum-selection clause. Instead, Article 248.1 is permissive, rather than mandatory. It gives sanctioned Russian parties the option of proceeding in Russia but does not require them to do so. Indeed, other sanctioned Russian parties have appeared in U.S. courts since.[9]

   34. Nonetheless, the Russian Arbitrazh Court ignored the forum-selection and choice-of-law provisions in both the Google Terms of Service and the YouTube Terms of Service, and accepted NFPT's arguments. (Ex. C at 2–3.) Google objected to the jurisdiction of the Russian courts. The Russian Arbitrazh Court wholly disregarded the parties' agreement to resolve all disputes in the courts of Santa Clara County, California, and ruled that foreign sanctions against Russian parties infringe on their rights and deliberately put them in an unequal position with other parties. The Russian Arbitrazh Court held that foreign sanctions against Russian parties infringe on their rights and that it is reasonable to doubt that a court of a state that imposed such sanctions would observe a sanctioned party's right to a fair trial. The Russian Arbitrazh Court also found, without justification, that "[t]here are no forum selection clauses that prevent the Russian court from adjudicating in the current dispute." (*Id.* at 2.) Without waiving its jurisdictional objection, Google was forced to litigate the case to judgment before the Russian

---

[9] *See, e.g.*, *Schansman et al v. Sberbank of Russia PJSC et al.*, No. 1:19-cv-02985-ALC-GWG, S.D.N.Y., ECF Nos. 396–400 (notices of appearance dated July 13, 2022 on behalf of Sberbank of Russia, a sanctioned Russian entity which was designated by OFAC on February 24, 2022); *id.*, ECF Nos. 426–28 (notices of appearance dated August 30, 2022 and August 31, 2022 on behalf of VTB Bank, a sanctioned Russian entity which was also designated on February 24, 2022).

COMPLAINT   10

Arbitrazh Court in an effort to mitigate damages.

35. In March 2023, the Russian Arbitrazh Court issued the Russian Judgment finding in favor of NFPT on its claims and ordered Google to unblock the YouTube Channel. (Ex. D.) The Russian Judgment explicitly ruled that Google's "repudiation" of the "Contract – Google Terms of Service, posted on the official site www.youtube.com" was invalid and ordered Google to "restore access to the YouTube-channel SPAS TV Channel, located on the Google-account http://www.youtube.com/spastvruchannel." (*Id.* at 12.)

36. The Russian Arbitrazh Court adopted NFPT's request nearly verbatim and imposed a compounding penalty in the amount of 100,000 rubles for each day of non-performance, starting from the fifth day of the effective date of the judgment, subject to a weekly twofold increase of the amount of the daily penalty. (*Id.* at 15.) The penalty was capped at 1 billion rubles for the first nine months. The court identified the penalty as an "*astreinte*" and stated that it would run until Google and a Russian affiliate of Google, OOO Google ("Google Russia"), complied with its order for specific performance. (*Id.* at 14–15.) The Russian Appellate Court and the Supreme Court of Russia summarily affirmed the Russian Judgment on appeal.

37. Google did not unblock the YouTube Channel. Google also did not pay the *astreinte*.

E. **NFPT Seeks to Enforce the Russian Judgment in Russia**

38. NFPT's action was a copycat claim, based on a prior action filed by NAO Tsargrad Media ("Tsargrad"). Tsargrad sued Google, Google Ireland and Google Russia in Russia in August 2020 and received a judgment with an identical *astreinte* penalty in April 2021. In early 2022, Tsargrad initiated proceedings to enforce its judgment in Russia against Google Russia, even though Google Russia was not a party to any contracts with Tsargrad and was not involved in any way in providing the services at issue to Tsargrad.

39. In enforcing the Tsargrad judgment, the Russian Federal Bailiff Service, an instrumentality of the Russian government, seized all of Google Russia's liquid assets in March 2022, causing Google Russia to become insolvent. Google Russia was subsequently declared bankrupt and is currently going through liquidation.

40. As part of Google Russia's bankruptcy proceedings, the Russian bankruptcy court appointed a bankruptcy manager or "liquidator," who is required to function as a neutral representative of creditors and the bankruptcy estate. This court-appointed bankruptcy manager, however, is represented by the same law firm that represented Tsargrad in obtaining its *astreinte* and represents Tsargrad, NFPT, and other parties in the Google Russia bankruptcy and other proceedings: Art de Lex.

41. In or around August 2023, the bankruptcy manager—represented by Art de Lex—unlawfully added NFPT's Russian Judgment and judgments obtained by other copycat claimants to the list of highest-priority debts of Google Russia, payable ahead of Google Russia's debts to employees and ordinary business creditors. And Art de Lex continues to represent NFPT and others in attempts to enforce the Russian Judgment against Google, including outside of Russia. As of the date of this Complaint, the Google Russia bankruptcy proceedings are ongoing.

**F.    NFPT Seeks to Enforce the Russian Judgment Outside of Russia Against Google and its Affiliates**

42. In December 2023, NFPT filed an *ex parte* motion before the High Court of Johannesburg (Gauteng Division) to initiate enforcement proceedings in South Africa. NFPT sought an order for alternative service on Google via email and to authorize the court sheriff to attach the shares of Google South Africa. (Ex. E.) Such an attachment is a jurisdictional prerequisite to bringing a recognition and enforcement action in South Africa. In February 2024, NFPT amended its *ex parte* motion to also seek the attachment of Google's trademarks registered in South Africa. The *ex parte* motion was granted by the High Court of South Africa in March 2024 (the "*Ex Parte* Order"). In May 2024, the court sheriff certified that she had executed the attachments.

43. Shortly afterwards, in June 2024, NFPT initiated the South African Enforcement Action to enforce a judgment of the Russian Appellate Court, which affirmed the Russian Judgment, against Google. NFPT named Google and Google South Africa as respondents, alleging that Google South Africa is the "official representative" of Google in South Africa, even though Google South Africa is not a party to the Russian Judgment or the related appellate

judgment. The South African Enforcement Action is an attempt to seize funds from Google outside of Russia, in furtherance of NFPT's continued effort to force Google to take action in California to unblock its account and bear the brunt of unjustified penalties.

44. In its court papers, NFPT described its claims before the Russian Arbitrazh Court, asserting that YouTube services were provided under both the Google Terms of Service and the YouTube Terms of Service, and that Google allegedly violated each of these agreements. (*Id.*) Google and Google South Africa each filed a notice of intent to oppose the South African Enforcement Action, which the parties agreed to stay pending the resolution of Google's and Google South Africa's application to contest and rescind the *Ex Parte* Order, *inter alia*, for the South African court's lack of jurisdiction.

45. Google understands from Russian court proceedings involving Google Russia that no later than a date in April 2024, NFPT commenced an application to recognize the Russian Judgment in Serbia. Google expects that service will be sent by diplomatic channels in accordance with Serbian law. Google further understands from correspondence received at its principal place of business in June 2024 that NFPT may have filed an action seeking the recognition and enforcement of the Russian Judgment in Kyrgyzstan. Google has not received service and does not know if NFPT's enforcement action in Kyrgyzstan has commenced.

46. Further, according to public reporting, NFPT, along with two other *astreinte* holders,[10] is now seeking through its attorneys (Art de Lex) the recognition and enforcement of the Russian Judgment in ten to fifteen jurisdictions around the world.[11] Google is informed and believes, and on that basis alleges, that NFPT will continue this campaign against Google in other countries and may seek an anti-suit injunction against Google from the Russian Arbitrazh Court to enjoin Google from proceeding with this lawsuit. These continued efforts by NFPT to

---

[10] *See supra*, n.3. Google is filing complaints against these two other companies, also seeking temporary restraining orders and preliminary injunctive relief.

[11] "A Court in South Africa Seized Google Assets Based on the Decision of the ASGM," Pravo RU (June 11, 2024), https://pravo.ru/news/253511/?_x_tr_hist=true; "High court grants Russian Orthodox Church permission to seize Google South Africa's assets," Daily Maverick (June 12, 2024), https://www.dailymaverick.co.za/article/2024-06-12-high-court-grants-russian-orthodox-church-permission-to-seize-google-south-africas-assets/.

pursue claims that purportedly arise under the Google Terms of Service in foreign jurisdictions will continue to harm Google by exposing it to unjustified costs and risk.

### G. Google Will Be Irreparably Harmed by NFPT's Enforcement Efforts

47. Google will face irreparable harm from NFPT's breach of the Google Terms of Service and its efforts to enforce the Russian Judgment and related appellate decisions.

48. Google will continue to be denied the benefit of its contractual rights to have disputes arising under the Google Terms of Service be decided by courts in Santa Clara County, California under California law. The purpose of the forum-selection and choice-of-law provisions in the Google Terms of Service is to ensure legal certainty and avoid politically motivated foreign tribunals from unfairly penalizing Google, like the Russian Arbitrazh Court did in NFPT's case.

49. NFPT seeks to enforce the Russian Judgment (via an appellate decision affirming the Russian Judgment) in its favor against Google in South Africa, among multiple other jurisdictions, in an effort to cause Google to reinstate its YouTube Channel contrary to its policies against harmful content and suffer financial harm. NFPT's enforcement efforts are a direct attempt to undermine the parties' contractual promises. Through these efforts, NFTP seeks benefit from a Russian Judgment that was obtained in the first instance in violation of the Google Terms of Service and that was only possible because of Russian laws specifically designed to counter U.S. sanctions.

50. Absent an order from this Court enjoining NFPT's enforcement efforts and declaring that NFPT must pursue any disputes arising under the Google Terms of Service in Santa Clara County, California (as it agreed to do), Google will be forced to continue litigating NFPT's claims all around the world.

51. Google consequently brings this action for breach of contract and declaratory and injunctive relief to stop NFPT's improper conduct that runs counter to U.S. law and NFPT's contractual obligations.

### FIRST CAUSE OF ACTION
**(Injunctive Relief – Breach of Forum-Selection Clause)**


COMPLAINT 14

52. Google incorporates by reference all foregoing and subsequent paragraphs as though fully set forth herein.

53. NFPT agreed to be bound by the Google Terms of Service which constitute a valid and binding contract between Google and NFPT under California law.

54. Google timely performed, or was excused from performing, its obligations under the Google Terms of Service.

55. NFPT and Google agreed to litigate all disputes arising under the Google Terms of Service in the courts of Santa Clara County, California, because the Google Terms of Service states that the terms are to be construed under California law unless prevented from doing so under local law. The exception did not apply to NFPT, because no applicable local law, including Article 248.1, prevented NFPT from suing in this Court or applying California law to resolve this dispute.

56. NFPT breached the Google Terms of Service by, among other things, choosing to assert claims arising thereunder before the Russian Arbitrazh Court and not the courts in Santa Clara County, California, as required by the Google Terms of Service.

57. As a direct and proximate consequence of NFPT's breach, the Russian Arbitrazh Court issued the Russian Judgment, causing damage to Google in the form of unnecessary costs and fees.

58. Google continues to face further irreparable harm as a result of NFPT's breach, including a compounding penalty under the Russian Judgment, and to bear other costs to enforce its rights, including attorneys' fees and other costs of litigation, including but not limited to harm resulting from NFPT's attempts to enforce the Russian Judgment and related appellate decisions in South Africa and other foreign jurisdictions.

59. Accordingly, NFPT and all of its officers, agents, servants, employees and attorneys, and all those in active concert or participation with them should be enjoined from commencing, prosecuting, continuing, or taking any steps in or otherwise participating in any proceedings in any jurisdiction other than the federal and state courts of Santa Clara County, California or the courts of England and Wales, as called for by any applicable forum-selection

clauses in applicable contracts, that seek to enforce or take advantage of the Russian Judgment and related appellate decisions. NFPT's lawsuits in Russia and NFPT's efforts to enforce the Russian Judgment outside Russia are vexatious and oppressive to Google and run counter to applicable law and NFPT's contractual obligations.

60. On information and belief, NFPT may seek an anti-suit injunction against Google from the Russian Arbitrazh Court in connection with this lawsuit, as permitted by Article 248.2 of the APC, to counter the impact of sanctions from "unfriendly" countries. This Court should enjoin any attempt by NFPT to obtain from the Russian Arbitrazh Court an anti-suit injunction against this or any related action brought by Google. Courts of Santa Clara County, California have exclusive jurisdiction under the Google Terms of Service to adjudicate the rights and responsibilities of Google and NFPT under that agreement. Any request for an anti-suit injunction by NFPT against Google before the Russian Arbitrazh Court would be a clear outgrowth of NFPT's punitive and extra-contractual efforts that led to the Russian Judgment at issue in this case. Such forum shopping was designed to frustrate U.S. policy and to be vexatious and oppressive to Google.

61. Finally, international comity will not tolerate a judgment that imposes a compounding, unconscionable penalty based on the blocking of a single YouTube channel.

## SECOND CAUSE OF ACTION

**(Declaration Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201)**

62. Google incorporates by reference all foregoing and subsequent paragraphs as though fully set forth herein.

63. NFPT agreed to be bound by the Google Terms of Service which constitute a valid and binding contract between Google and NFPT under California law.

64. Google timely performed, or was excused from performing, its obligations under the Google Terms of Service.

65. NFPT and Google agreed to litigate all disputes arising out of or relating to the Google Terms of Service in the courts of Santa Clara County, California, because the Google Terms of Service state that the terms are to be construed under California law unless prevented

from doing so under local law. The exception did not apply to NFPT, because no applicable local law, including Article 248.1, prevented NFPT from suing in this Court or applying California law to resolve this dispute.

66. NFPT breached the Google Terms of Service by, among other things, choosing to assert claims arising thereunder before the Russian Arbitrazh Court and not courts in Santa Clara County, California, as required by the Google Terms of Service.

67. Even though the Russian Judgment was obtained in violation of the Google Terms of Service, NFPT seeks to enforce the Russian Judgment and related appellate decisions against Google (and its affiliates) in South Africa and other foreign jurisdictions.

68. There is an actual, justiciable, and substantial controversy between Google and NFPT concerning their legal rights and obligations under the Google Terms of Service in South Africa and other foreign jurisdictions. A judicial determination is necessary and required at this stage to adjudicate the legal interests of the parties.

69. A declaratory judgment would serve the necessary purpose of clarifying and settling the legal relations between the parties, finalizing the controversy, and offering relief from the significant uncertainty and harm that currently exist as a result of NFPT's actions in connection with obtaining and enforcing the Russian Judgment and related appellate decisions. The substantial controversy between the parties regarding these issues is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

70. Accordingly, Google respectfully requests declarations to the effect that:
   a. The forum-selection clause and choice-of-law provisions of the Google Terms of Service are valid and binding upon NFPT;
   b. NFPT breached the Google Terms of Service when it pursued claims purportedly arising under the Google Terms of Service in Russia;
   c. NFPT was required to resolve, and must resolve, any disputes purportedly arising out of or related to the Google Terms of Service under California law in the courts of Santa Clara County, California;

|  |  |
|---|---|
| 1 |   d. NFPT's pursuit of enforcement efforts, including the filing of the South |
| 2 |     African Enforcement Action and other recognition and/or enforcement |
| 3 |     actions, causes further harm to Google arising from NFPT's breach of the |
| 4 |     Google Terms of Service; and |
| 5 |   e. The Russian Judgment's *astreinte* is an unconscionable penalty and a |
| 6 |     punitive judgment, the enforcement of which would violate principles of |
| 7 |     comity and due process, and is unenforceable against Google. |

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in favor of Google and against Defendant, as follows:

1. Declarations that:

   a. The forum-selection clause and choice-of-law provisions of the Google Terms of Service are valid and binding upon NFPT;

   b. NFPT breached the Google Terms of Service when it pursued claims purportedly arising under the Google Terms of Service in Russia;

   c. NFPT was required to resolve, and must resolve, any disputes purportedly arising out of or related to the Google Terms of Service under California law in the courts of Santa Clara County, California;

   d. NFPT's pursuit of enforcement efforts, including the filing of the South African Enforcement Action and other recognition and/or enforcement actions, causes further harm to Google arising from NFPT's breach of the Google Terms of Service, causes further harm arising from NFPT's breach of the Google Terms of Service; and

   e. The Russian Judgment's *astreinte* is an unconscionable penalty and a punitive judgment, the enforcement of which would violate principles of comity and due process, and is unenforceable against Google.

2. Preliminary and permanent injunctions enjoining NFPT from commencing, prosecuting, continuing, or taking any steps in or otherwise participating in any proceedings in

COMPLAINT    18

any jurisdiction other than the federal and state courts of Santa Clara County, California or the courts of England and Wales, as called for by any applicable forum-selection clauses in applicable contracts, that seek to enforce or take advantage of the Russian Judgment and all related appellate decisions against Google and its affiliates;

3. Preliminary and permanent injunctions enjoining NFPT from commencing, prosecuting, continuing, or taking any steps in or otherwise participating in any proceedings in the Russian Federation intended to restrain or impede Google's pursuit of this action;

4. Damages caused by NFPT's breach of the Google Terms of Service's forum-selection clause;

5. Attorneys' fees and costs; and

6. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Google respectfully requests a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure for all issues so triable in this action.

Dated: August 19, 2024          KING & SPALDING LLP

By:  */s/ Jeanne A. Fugate*
     OLIVIA A. RADIN
     JEANNE A. FUGATE
     NICOLE PEREIRA
     KATHRYNE HUNTER

Attorneys for Plaintiff GOOGLE LLC